NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0506n.06

Nos. 08-4088, 08-4095

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

*Jul 22, 2011*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| | ) | NORTHERN DISTRICT OF OHIO |
| ARKEEFE SHERRILLS, | ) | |
| SHANEKA PITTMAN, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

Before: BOGGS and KETHLEDGE, Circuit Judges; and COLLIER, Chief District Judge.[*]

**CURTIS L. COLLIER, District Judge.** Defendants Arkeefe Sherrills ("Sherrills") and

Shaneka Pittman ("Pittman"), husband and wife, were convicted following a jury trial. Both Sherrills

and Pittman were found guilty of conspiracy to possess with intent to distribute cocaine and

phencyclidine ("PCP") and possession with intent to distribute cocaine. Pittman was found guilty

of one count, and Sherrills was found guilty of sixteen counts, of unlawful use of a communication

facility to facilitate drug trafficking. Sherrills was also found guilty of conspiring to commit money

laundering. On appeal, Sherrills challenges the denial of his motion to suppress wiretap evidence

and incorporates by reference all arguments raised by Pittman. Pittman appeals the district court's

---

[*]The Honorable Curtis L. Collier, Chief United States District Judge for the Eastern District
of Tennessee, sitting by designation.

denial of both her motion to suppress and motion for a mistrial, and contends the admission of certain testimony deprived her of a fair trial. Pittman asks this court to vacate her 240-month sentence as unreasonable.

For the reasons given below, we **AFFIRM**.

**I.**

In September 2006, an investigator from Southwest Airlines ("Southwest") contacted the Cleveland High Intensity Drug Trafficking Area Task Force concerning suspicious activity related to credit card fraud and Southwest Rapid Rewards accounts. A confidential source also provided the task force with a tip regarding a group of suspected drug traffickers, including both Sherrills and Pittman, who may have sent as many as 80 couriers on over 500 flights beginning as early as 2004. As a result of the collaborative efforts of Southwest and the task force, a large-scale drug trafficking organization was uncovered. This organization was sending couriers from Los Angeles, California, to several cities in the Midwest, including Cleveland, Ohio.

During the course of the investigation, Southwest would contact law enforcement when suspected couriers were traveling to Cleveland and officers would periodically interdict them. For example, on September 13, 2006, Albert Bivens was stopped and found to be carrying 1.5 kilograms of cocaine between his legs inside a girdle. Similarly, on September 19, 2006, two sisters, Mary and Leona Williamson, were stopped in Phoenix, Arizona, each carrying 1.5 kilograms of cocaine in a

similar manner. All three of these individuals had Sherrills's phone number stored in their cell phones under the name "Duke," a nickname Sherrills regularly used.

On October 5, 2006, Canie Gibson ("Gibson") and John Hawkins ("Hawkins") were observed entering a white Hyundai Sonata rented by Sherrills and driven by Pittman. Gibson and Hawkins had flown on Southwest from Los Angeles to Cleveland and Pittman picked them up at the airport. Gibson was seen leaving the vehicle at a hotel and returning to the vehicle with a package she placed in the backseat. A few days later, on October 10, 2006, law enforcement stopped this same rental car driven by Pittman and seized six kilograms of cocaine from four couriers who had concealed drugs in girdles. Pittman had picked up these couriers from the Detroit Airport.

In March 2007, based on an affidavit submitted by Kenneth D. Riolo ("Agent Riolo"), Special Agent of the Federal Bureau of Investigation, a wiretap was authorized on two cellular phones believed to be possessed by Sherrills and Derrick Wade. After 30 days, the court approved continued interception of Sherrills's line and two additional lines. In May 2007, these interceptions revealed Sherrills, Richard White, and Pittman coordinating arrangements for couriers to fly into Akron-Canton Airport from California. Officers were then able to intercept these couriers and seize three kilograms of cocaine. The investigation also established that Sherrills worked with Anthony Harris, who incorporated a business and opened a checking account at Sherrills's request. This account was used to launder drug proceeds obtained by Sherrills.

On June 12, 2007, Sherrills, Pittman, and twenty other defendants were indicted. Following

- 3 -

the original indictment, Pittman filed a motion to suppress the evidence seized from the passengers

during the October 2006 search of Pittman's vehicle. An evidentiary hearing was conducted on

August 2, 2007, and the court questioned Pittman's standing to challenge the seizure of cocaine from

passengers in the vehicle she was driving and ordered Pittman to brief the issue. On August 21,

2007, the court denied Pittman's motion to suppress based on a lack of standing and alternatively,

because the traffic stop and subsequent use of canine detection did not violate the Fourth

Amendment.

A federal grand jury in the Northern District of Ohio returned a superseding indictment on

August 7, 2007, charging Sherrills, Pittman, and 18 others with conspiring to possess with intent to

distribute cocaine, phencyclidine ("PCP"), and marijuana in violation of 21 U.S.C. §§ 841(a)(1),

(b)(1)(A), and (b)(1)(D), and 846 (Count One). Pittman was charged in Count Two with possessing

with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A). Sherrills was

also charged with possessing with intent to distribute cocaine in Count Five, but for a lesser quantity,

in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Pittman was charged in Count Twenty-Three

and Sherrills in Counts Eight through Thirty-Eight with using a communication facility to facilitate

a drug trafficking offense in violation of 21 U.S.C. § 843(b). Count Thirty-Nine charged Sherrills

with conspiring to commit money laundering in violation of 18 U.S.C. § 1956(h).

Sherrills filed a motion to suppress on November 5, 2007, challenging the probable cause and

necessity showings in the supporting affidavit and requesting a hearing concerning the veracity of

the affiant. The district court denied the motion without a hearing.  The  case proceeded to trial on January 11, 2008, before Judge John R. Adams.

During the trial, Codefendants Derrick Wade ("Wade") and Richard White ("White") testified about being recruited into the conspiracy by Sherrills and how Pittman supplied them with cocaine when Sherrills was unavailable.  White described developing a friendship with Sherrills while they were incarcerated and testified Pittman continued the courier operations while Sherrills was in prison. Both Wade and White testified it was Pittman's idea to transport the drugs using girdles. Testimony from other codefendants established the organization of the conspiracy and how the money and drugs were collected and transported. This testimony was corroborated by recordings of conversations and surveillance by law enforcement.

On January 28, 2008, the jury found Sherrills guilty on one count of conspiracy to possess with intent to distribute cocaine and PCP, one count of possession with intent to distribute cocaine, one count of conspiracy to commit money laundering, and sixteen counts of unlawful use of a communication facility to facilitate drug trafficking.[1]  Pittman was found guilty of conspiracy to possess with intent to distribute cocaine and PCP, possession with intent to distribute cocaine, and one count of unlawful use of a communication facility to facilitate drug trafficking.

---

[1]The government had previously dismissed the remaining counts against Sherrills.

Sherrills had two prior felony drug convictions and received a mandatory life sentence for the conspiracy conviction in Count One pursuant to 21 U.S.C. §§ 841(b)(1)(A) and 851. He received sentences of ten years on Count Five, twenty years on Count Thirty-Nine, and four years on each of the remaining counts. All terms were to be served concurrently with each other. Sherrills was sentenced to eight years of supervised release on Count Five, and three years on each of the remaining counts- all terms to be served concurrently. He was also ordered to pay a special assessment in the amount of $1900.

At Pittman's sentencing proceeding, the court found her criminal history to be over-represented and, after prompting a motion by defense counsel, reduced Pittman's criminal-history category from III to II. Pittman's guideline range was calculated as 262 to 327 months of imprisonment, based on an offense level of thirty-eight (including a two-level role adjustment under USSG § 3B1.1(c)) and a criminal-history category of II. Pittman objected to the base offense level of thirty-six because the jury's verdict required a finding only that Pittman was involved with at least five kilograms of cocaine instead of the fifty kilograms or more calculated in the presentence report. The court overruled Pittman's objection, but granted a downward variance and imposed a sentence of 240 months on Count One. In addition, Pittman was sentenced to 240 months on Count Two, and four years on Count Twenty-Three, all terms to be served concurrently. Pittman was sentenced to terms of supervised release of five years on Count One, ten years on Count Two, and three years on Count Twenty-Three and ordered to pay a special assessment of $300.

Each defendant filed a timely notice of appeal.

## II.

### A.      Sherrills

In his opening and reply briefs, Sherrills specifically addresses only the district court's denial of his suppression motion. However, in a footnote, Sherrills incorporates by reference all arguments made by Pittman in her brief. Sherrills did not move for a mistrial and any arguments made by Pittman regarding her sentence are specific to her. Accordingly, only the arguments discussed in sections B.2 and B.4 below are properly extended to Sherrills.

#### 1.      Motion to Suppress

Sherrills appeals the district court's denial of his motion to suppress evidence obtained pursuant to the wiretap orders issued on March 5, 2007, and April 10, 2007. The initial application for wiretap interception was accompanied by a 63-page affidavit executed by Agent Riolo. Sherrills challenges this affidavit as deficient as it lacks a showing of necessity with respect to intercepting communications on Target Phone #1, the one used by Sherrills. Sherrills contends the government did not demonstrate that normal investigative procedures were unavailable, as required under 18 U.S.C. § 2518(1)(c) and (3)(c), specifically with respect to him.

We review the district court's decision on a motion to suppress using "a mixed standard of review: we review findings of fact for clear error and conclusions of law de novo." *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008). Where, as here, the motion to suppress is denied, all evidence is viewed in the light most favorable to the government. *United States v. Blair,* 524 F.3d 740, 748 (6th Cir. 2008).

Pursuant to 18 U.S.C. § 2518(1)(c), a wiretap application must include "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." This requirement, often referred to as the "necessity requirement," protects against the impermissible use of a wiretap as the initial step of an investigation and ensures such interceptions are "not resorted to in situations where traditional investigative techniques would suffice to expose the crime." *United States v. Rice*, 478 F.3d 704, 710 (6th Cir. 2007)(citations omitted). The government's burden to establish necessity does not require showing "every other imaginable method of investigation has been unsuccessfully attempted, but [is] simply to inform the issuing court of the difficulties involved in the use of conventional techniques." *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir. 1977).

In the specific section of the affidavit labeled "Need for Interception" various investigative techniques are described as futile or dangerous specifically with respect to Derrick Wade. However, there is no reason to exclude their applicability to Sherrills or others in the conspiracy. Viewing the affidavit as a whole, the phone identified as Target Phone #1 is associated with a large volume of

telephone calls to the other interceptee target, Target Phone #2. The analysis of calls associated with Target Phone #1 establishes the high volume of calls made to other numbers associated with individuals known or suspected of drug trafficking. Further, the calls between these phones or between Target Phone #2 and another phone associated with Sherrills and/or Pittman occur on dates of travel by confirmed and suspected drug couriers. The affidavit details the need for interception of Target Phone #1, as it was a contact number for travel arrangements and would further illuminate Sherrills's involvement in the drug trafficking organization.

Far from being an initial step, the affidavit describes a seven-month long investigation into the ongoing extensive network of the drug trafficking organization associated with Wade. Agent Riolo describes the limitations on obtaining additional evidence through confidential sources, the lack of cooperation by individuals apprehended at the Phoenix Airport, the problems with trash pulls, the unsuccessful surveillance efforts, referring to "Derrick Wade and his close associates," and later referencing Sherrills as a target of surveillance. Agent Riolo specifically notes the problems with surveillance in hotels where many of these transactions occurred. The need for interception of Target Phone #1 is well-established, as the affidavit amply addresses the difficulties of using conventional techniques. The affidavit includes specific facts as to each type of investigative method used and for those not pursued, such as search warrants, Agent Riolo provides case-specific reasons why they would be inadequate. For example, "Source 2 and Source 3 advised that DERRICK WADE keeps cocaine at his mother's residence only for a short period of time when necessary." This level of

specificity is markedly distinct from the "generalized and uncorroborated information" or boilerplate "statements in the conclusory [sic] language of the statute" deemed insufficient in the cases cited by Sherrills. *Cf. Rice,* 478 F.3d at 711; *United States v. Castillo-Garcia*, 117 F.3d 1179, 1188 (10th Cir. 1997).

Viewing the affidavit in its entirety, Sherrills had an identifiable relationship with Target Phone #1. In light of the large-scale organization, the locations of transactions, and the unsuccessful interviews of other suspects, the district court was provided a full and complete statement regarding other investigative procedures. The government satisfied its burden of establishing necessity for interception and the district court properly authorized interception of Target Phone #1. The continued authorization of this wiretap was not "tainted" and was also proper.

We therefore affirm the district court's denial of Sherrills's motion to suppress.

**B.      Pittman**

Pittman raises the following five issues on appeal: the denial of her motion to suppress, the government's alleged improper vouching for witnesses, the denial of her motion for a mistrial, the admissibility of a particular statement by White, and the reasonableness of her 240-month sentence. We will address each argument in turn.

**1.      Motion to Suppress**

Pittman moved to suppress any and all evidence seized by law enforcement during the October 10, 2006 traffic stop. At the suppression hearing, the court questioned whether Pittman could object to the seizure of cocaine from passengers in the vehicle she was driving and ordered briefing on the issue of standing. Although the district court authorized the continuation of the suppression hearing, it denied the motion to suppress based on a lack of standing and no further hearing was held. Pittman challenges the denial of the suppression motion as well as her deprivation of any further hearing on the matter.

We review findings of fact concerning standing to challenge a Fourth Amendment violation for clear error and the legal determination of standing *de novo*. *United States v. Pollard*, 215 F.3d 643, 646 (6th Cir. 2000).

Pittman fails to establish standing to suppress cocaine obtained from passengers riding in the vehicle she was driving. Pittman did not claim ownership of the cocaine or that the passengers were holding it for her benefit, nor did she present evidence of any personal interest in the seized cocaine. "Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted." *Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978)(citations omitted). In *United States v. Myers*, 102 F.3d 227, 231 (6th Cir. 1996), this court denied the defendant's standing to challenge the personal search of the passengers in his car or the admissibility of evidence found on them. "[W]hen a defendant is aggrieved by an allegedly illegal search of a third party's person or property, the Fourth Amendment rights of *that* defendant have not been infringed." *Id*. Absent

standing to challenge the seizure of cocaine from the passengers, there was no error in denying

additional hearings on Pittman's motion to suppress.

We affirm the decision of the district court.

**2.      Improper Vouching**

Pittman contends the government engaged in improper vouching for certain witnesses and

unfairly bolstered their testimony.  Whether the government's line of questioning amounted to

prosecutorial misconduct and whether it rendered the trial fundamentally unfair are mixed questions

of law and fact, reviewed *de novo*. *United States v. Francis*, 170 F.3d 546, 549 (6th Cir. 1999).[2] The

first step in reviewing a claim of prosecutorial misconduct is determining whether the statements

were improper. *Id.* If they appear improper, this court must then look to see if the statements were

flagrant and warrant reversal. *United States v. Reid*, 625 F.3d 977, 982 (6th Cir. 2010).

The challenged questioning occurred during the redirect examination of government

witnesses Richard White and Janice Johnson ("Johnson").  During cross-examination of both of

these witnesses, the defense counsel elicited testimony regarding the number of times they were

debriefed, evidence they were given by the government, and their expected benefit for cooperation.

---

[2]Sherrills failed to object to this testimony in the district court.  To the extent he is incorporating Pittman's argument, it is reviewed under a plain-error standard. *United States v. Emuegbunam*, 268 F.3d 377, 406 (6th Cir. 2001).

On redirect, the government asked White: "What were you told each time you talked?" and asked Johnson: "[W]hat type of information were you told you needed to provide in order to provide assistance?" These questions were open-ended and aimed at correcting the impression of bias generated during cross. There was no improper vouching as the prosecutor did not suggest a personal belief in the witnesses' credibility. *See Reid*, 625 F.3d at 984 ("Because the prosecutor limited his questions and comments to those facts and did not imply any special knowledge regarding the credibility or truthfulness of the cooperating witnesses, the prosecutor did not improperly vouch for the witnesses."). This court has consistently held it is not improper vouching to refer to a promise to testify truthfully as part of a plea agreement. *Id.; United States v. Owens*, 426 F.3d 800, 806 (6th Cir. 2005); *United States v. Trujillo*, 376 F.3d 593, 608-09 (6th Cir. 2004). Here, there is even greater support for the propriety of the government's questions to respond, as a motive to testify falsely was suggested during cross-examination.

Because the prosecutor's questions were not improper, there is no need to address the second part of the inquiry.

**3.     Motion for Mistrial**

Pittman moved for a mistrial, claiming the jury overheard the district court's admonishment of defense counsel during a sidebar discussion. The district court had sustained multiple objections pertaining to counsel's exceeding the scope of direct examination during cross and questioning

witnesses about privileged information.   The court then instructed parties to approach at sidebar,

where the following exchange took place:

> THE COURT:   When I sustain an objection and I tell you to move on, you will do so.  Clear?
>
> MR. PALOMBARO: Clear.
>
> THE COURT:   Because if you do not, I will - - believe me, I will take the appropriate action.   This is not within the scope of the redirect, period.  Enough.  And I'm not going to allow you to ask questions about the witness's conversations with his attorney.  It's inappropriate.  It's privileged.

J.A. 503. Immediately following the sidebar, the court dismissed the jury due to weather conditions.

Pittman's counsel then moved for a mistrial based on a concern the jury now had the impression that

either one of the defense attorneys did something unethical or improper.  The district court denied

this motion, reasoning:

> Any idea that the jurors may have overheard our discussion is purely speculation on your part. You have no information to know whether the jurors heard or in any way heard these comments.  We were at the left side of the bar outside the vision of the jury, I believe, and certainly outside the hearing of the jurors.

J.A. 507.

At the government's request, the district court provided the following instructions when the

jury returned the next day:

> As I indicated, there will be times that parties will raise objections to questions. I will

be called upon to rule on evidentiary matters. Sometimes it will be necessary for me to meet with the attorneys at sidebar to address those issues. Please disregard any and all matters related to those sidebars, if you would. Again, at times there are evidentiary issues that require my attention outside of your hearing at sidebar and we will attempt to keep those to a minimum and attempt to proceed expeditiously, but you are instructed and should disregard any and all matters related to those sidebars. Again, it's strictly evidentiary issues. I am required to rule upon them from time to time. Sometimes they are difficult issues and let's just leave it at that.

J.A. at 519. This instruction was supplemented during closing instructions when the court reminded the jury to completely ignore things they were ordered to disregard and that rulings on objections are based on the rules of evidence.

This court reviews the denial of a motion for a mistrial for abuse of discretion. *United States v. Martinez*, 430 F.3d 317, 336 (6th Cir. 2005). Such an abuse exists "when the reviewing court is firmly convinced that a mistake has been made." *Trujillo*, 376 F.3d at 613 (citation omitted).

The district court did not abuse its discretion in denying Pittman's motion for a mistrial. The trial judge was in the courtroom and was in the best place to determine whether comments could be overheard during a sidebar discussion. The court's directions to counsel during the sidebar pertained to how the trial was conducted and not the guilt or innocence of either Pittman or Sherrills. There is a general presumption juries will follow curative instructions, *see United States v. Moreno*, 933 F.2d 362, 368 (6th Cir. 1991), and any possible prejudice resulting from the jury's overhearing of the sidebar discussion was promptly and thoroughly remedied by the court's explicit instructions.

**4.       White's Statement**

Pittman claims the district court erred by allowing inadmissible hearsay during the direct examination of White.  White testified that Sherrills told White it was Pittman's idea to transport drugs in girdles.  After describing how the cocaine was cut, placed in freezer bags, and carried using a woman's girdle, the government's attorney asked White:

Q.      Did [Sherrills] ever tell you whose idea that was?

A.      Yeah, basically he did.  He said his wife had been - -

MR. WATSON:       Objection.

THE COURT:        It's overruled.

THE WITNESS:      That's what she had been doing while he was in prison.

J.A. at 350.  Pittman argues admission of White's testimony was not proper under Rule 801(d)(2)(E) of the Federal Rules of Evidence because the district court failed to make the requisite findings for admission of a coconspirator statement outlined in *United States v. Young*, 553 F.3d 1035, 1045 (6th Cir. 2009).  Pittman also claims the admission of these statements violated her confrontation rights because it is undisputed Sherrills asserted his Fifth Amendment right and did not testify.[3]

A district court's evidentiary rulings, including hearsay, are reviewed for an abuse of discretion.  *United States v. Wright*, 343 F.3d 849, 865 (6th Cir. 2003).  Whether the government has

---

[3] Sherrills adopts this argument on appeal.  However, White's statement regarding what Sherrills told him was not hearsay and was properly admitted against Sherrills as a statement by a party opponent, pursuant to Federal Rule of Evidence 801(d)(2)(A).

met its burden of showing a conspiracy under Rule 801 of the Federal Rules of Evidence is a preliminary determination of fact that will not be set aside unless clearly erroneous. *United States v. Gonzalez*, 501 F.3d 630, 635-36 (6th Cir. 2007).

White's statement above is admissible against Pittman as a statement by a coconspirator under Rule 801(d)(2)(E), subject to three foundational prerequisites. The government must establish by a preponderance of the evidence the existence of a conspiracy, the defendant's membership in the conspiracy, and that the declarant's statement was made in furtherance of the conspiracy. *United States v. Payne*, 437 F.3d 540, 544 (6th Cir. 2006). Pittman cites as error the district court's admission of White's statement prior to the government satisfying its burden. This sequence is not necessarily improper. Prior to White's testimony, the district court deferred ruling on anticipated coconspirator statements subject to a later determination of admissibility. This is a recognized practice and was not an abuse of discretion. *See, e.g.*, *United States v. Robinson*, 390 F.3d 853, 867 (6th Cir. 2004)(quoting *United States v. Vinson*, 606 F.2d 149, 153 (6th Cir. 1979))("[W]e have long recognized the trial court's prerogative to conditionally admit co-conspirator statements 'subject to later demonstration of their admissibility by a preponderance of the evidence'").

The more problematic issue is the district court's failure to make specific findings that the requisites for admission had been satisfied at all. These findings were made for other statements, and perhaps the court concluded it was implicit based on the volume of evidence presented that Sherrills and Pittman were coconspirators and a specific determination was unnecessary. It is simply

unclear from the record. The absence of specific findings has, in many cases, warranted a remand to make such findings. *See e.g.*, *United States v. Conrad*, 507 F.3d 424, 431-32, 435 (6th Cir. 2007); *United States v. Holloway*, 731 F.2d 378, 382 (6th Cir. 1984). However, in this case, the district court's failure to make a specific finding constitutes harmless error in light of the overwhelming evidence proving the conspiracy and Pittman's active involvement. *Young*, 553 F.3d at 1047-48; *United States v. Rogers*, 118 F.3d 466, 478 (6th Cir. 1997).

Evidence of Pittman's coaching, purchase of, and instructions on couriers' use of girdles was properly admitted during testimony of Brown and Johnson. Both White and Wade provided detailed testimony on how they were recruited by Sherrills into the conspiracy and were provided cocaine by Pittman. Wade described getting flight details and instructions from either Pittman or White. Numerous coconspirators testified that Sherrills and Pittman provided instructions, payments, and drugs to couriers and collected drugs and money that were transported. The government introduced incriminating recorded conversations, including: White and Sherrills discussing the recent apprehension of a courier, Pittman offering to switch vehicles with Sherrills because she was concerned he would be pulled over in the car with the drugs in it, and Pittman and Sherrills discussing the drug transactions and money arrangements. In addition, Pittman was observed picking up couriers from the airport in a vehicle rented by Sherrills on multiple occasions. This evidence provides fair assurance the verdict was not substantially swayed by the erroneous admission of the single statement during White's testimony. *See United States v. Warman*, 578 F.3d 320, 340-

41 (6th Cir. 2009).

Pittman's argument that admission of the statement violated the Confrontation Clause is without merit as Sherrills's statement was not testimonial. A criminal defendant is guaranteed the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. The Supreme Court in *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004), held the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." By contrast, the Confrontation Clause has no bearing on out-of-court statements that are not testimonial. *Whorton v. Bockting*, 549 U.S. 406, 420 (2007); *Davis v. Washington*, 547 U.S. 813, 825 (2006); *United States v. Johnson*, 581 F.3d 320, 325 (6th Cir. 2009).

In deciding whether a statement is testimonial, the proper inquiry is whether the declarant "intends to bear testimony against the accused." *United States v. Cromer*, 389 F.3d 662, 675 (6th Cir. 2004). The test is "whether a reasonable person in the declarant's position would anticipate his statement being used against the accused in investigating and prosecuting the crime." *Id.* At the time Sherrills was describing the girdle method of drug transportation, he was not reasonably anticipating use of this statement against Pittman at a later date and its admission was not a violation of the Confrontation Clause. *See Martinez*, 430 F.3d at 329 ("We agree that a reasonable person in the position of a coconspirator making a statement in the course and in furtherance of a conspiracy would not anticipate his statements being used against the accused in investigating and prosecuting

the crime."); *accord Warman*, 576 F.3d at 337 n.2.

There was overwhelming evidence of the existence of a conspiracy involving both Sherrills and Pittman and the statement describing the method of transporting cocaine in girdles was made during Sherrills's attempt to recruit White, in furtherance of the conspiracy. Although the district court erred in failing to make the necessary findings to admit this statement against Pittman as a coconspirator, here such error is harmless.

**5.     Sentence**

Pittman appeals her sentence of 240 months, claiming the calculation of drug quantity violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), or, in the alternative, that the attribution to Pittman of 50 kilograms of cocaine was not supported by a preponderance of the evidence. Pittman also argues the district court failed to place "a high enough value" on her history and characteristics and these should have been factored "more significantly as mitigating factors." Pittman's sentence of 240 months is the result of a downward variance of 22 months from her Guideline range of 262 to 327 months.

 Sentences are reviewed for reasonableness, under an abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 46 (2007).[4] This includes an examination of the "procedural" and

--------

[4] Although Pittman objected to the calculation of her drug quantity during sentencing, she raises the *Apprendi* argument for the first time on appeal, which would ordinarily limit appellate

"substantive" reasonableness of the sentence imposed. *United States v. Vowell*, 516 F.3d 503, 509 (6th Cir. 2008). A sentence is procedurally unreasonable if the district court does not calculate the Guidelines range or calculates it improperly, treats the Guidelines as mandatory, fails to consider the factors in 18 U.S.C. § 3553(a), selects a sentence based on clearly erroneous facts, or gives an inadequate explanation for the sentence. *United States v. Peebles*, 624 F.3d 344, 347 (6th Cir. 2010). Sentences are substantively unreasonable if the district court selects the sentence arbitrarily, bases the sentence on impermissible factors, fails to consider pertinent § 3553(a) factors or gives an unreasonable weight to any pertinent factor. *United States v. Husein*, 478 F.3d 318, 332 (6th Cir. 2007) (citations omitted). "The touchstone for our review is whether the length of the sentence is reasonable in light of the § 3553(a) factors." *United States v. Tate*, 516 F.3d 459, 469 (6th Cir. 2008).

In *Apprendi*, the Court held "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Here, the jury's verdict on Count One included the finding Pittman conspired to possess with intent to distribute at least five or more kilograms of cocaine, at least one kilogram of PCP, and less than fifty kilograms of marijuana. On Count Two, the jury determined Pittman possessed with intent to distribute five kilograms or more

---

review to plain error. *United States v. Bailey*, 488 F.3d 363, 367-68 (6th Cir. 2007). However, the district court did not make the inquiry required by *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), and only asked "Anything further?" at the end of the proceedings. This deficient inquiry does not restrict our review to a plain-error analysis. *United States v. Thomas*, 498 F.3d 336, 340 (6th Cir. 2007).

of cocaine. These offenses authorized a mandatory minimum of ten years imprisonment up to a maximum of Life. 21 U.S.C. § 841 (b)(1)(A). The district court's determination Pittman should be held responsible for fifty kilograms or more of cocaine resulting in a Guideline range of 262 to 327 months was not an *Apprendi* violation because it did not increase the penalty for the crime beyond the statutory maximum of Life. *United States v. Copeland*, 321 F.3d 582, 602 and n.5 (6th Cir. 2003).

The district court did not abuse its discretion in determining the government had established by a preponderance of the evidence the drug quantity of at least fifty kilograms of cocaine attributable to Pittman. Pittman correctly notes that a district court should err on the side of caution when calculating drug quantities. "If the exact amount of drugs is undetermined, an estimate will suffice, but [a] district court may not hold a defendant responsible for a specific quantity of drugs unless the court can conclude the defendant is more likely than not *actually* responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible." *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008)(citations and internal quotation marks omitted).

In calculating the drug quantity, the district court relied on the government's detailed descriptions of drug transactions in which Pittman had direct involvement. Before even considering any amount of PCP, or any additional amounts of cocaine properly attributed to Pittman based on other reasonably foreseeable transactions of her coconspirators, *see Gonzalez*, 501 F.3d at 642, these calculations conservatively yielded at least fifty kilograms of cocaine. This quantity resulted in a base

offense level of thirty-six, and this calculation was supported by a preponderance of the evidence.

Pittman's Guideline range was properly calculated as 262 to 327 months based on an offense level of 38 (including a two-level enhancement under USSG §3B1.1(c) for being an organizer or manager) and a criminal-history category of II (after the district court departed downward based on her history being over-represented). There is no other challenge to the procedural reasonableness of the sentence.

Having concluded the sentence is procedurally sound, we must now evaluate the substantive reasonableness of the sentence. Pittman does not argue the district court failed to address arguments in mitigation, a procedural reasonableness argument, but instead challenges the "value" placed on certain arguments. Pittman contends her history of substance and physical abuse, her abusive childhood, and the fact she was the mother of four children, should have been given more weight by the district court. These factors were all specifically recognized in the district court's written sentencing opinion and prompted the court to vary downward from Pittman's calculated range. The 22-month downward variance was based in part on "the difficult childhood of the defendant as outlined herein, the fact that the defendant has a limited education, that the defendant has been subjected to domestic abuse, [and] that the defendant appears to have been influenced in a negative fashion by her husband and co-defendant Arkeefe Sherrills." The court's consideration of the need for psychiatric and medical care was also reflected during its discussion of the need for correctional treatment under 18 U.S.C. § 3553(a).

The court set out in a written sentencing memorandum its reasons for imposing the 240 month sentence to reflect the seriousness of the offense, to protect the public, to afford adequate deterrence, and also to avoid unwarranted disparities. The court also looked at Pittman's significant role in the conspiracy to justify a substantial sentence of incarceration. The court recognized Pittman's children's possible placement in foster care and its failure to afford greater weight to the adverse impact on the children was entirely within the court's discretion. The judge is "not required to explicitly address every mitigating argument that a defendant makes, particularly when those arguments are raised only in passing." *United States v. Madden*, 515 F.3d 601, 611 (6th Cir. 2008). The families of incarcerated defendants are commonly the ones who suffer most. Pittman did not argue how this factor differs from other defendants sentenced within the Guidelines or how it supports a variance. It is clear from the record, including the written sentencing opinion, the court considered all the § 3553(a) factors in fashioning a sentence and even *sua sponte* found Pittman's criminal history over-represented and encouraged defense counsel to move for a departure.

There is a presumption of reasonableness afforded sentences within the Guidelines. *Rita v. United States,* 551 U.S. 338, 347 (2007). In this case, where the sentence imposed is below the Guideline range, a defendant's burden to demonstrate unreasonableness becomes more demanding. *United States v. Curry*, 536 F.3d 571, 573 (6th Cir. 2008). Pittman fails to establish her sentence was unreasonable.

Pittman's sentence of 240 months was both procedurally and substantively reasonable.

Finally, we reject as meritless the arguments set forth in Sherrills's initial, *pro se* brief on appeal.

## III.

For these reasons, we AFFIRM.