# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3126

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri. |
| Aaron Williams, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: June 15, 2010
Filed: August 5, 2010

_____

Before MURPHY, BEAM, and BENTON, Circuit Judges.

_____

BEAM, Circuit Judge.

Following the denial of Aaron Williams's motion to suppress evidence seized during a warrantless arrest and search of a vehicle in which he was a passenger, a jury found Williams guilty of conspiracy to possess with intent to distribute in excess of one kilogram of heroin. The district court[1] sentenced Williams to 262 months' imprisonment, ten years' supervised release, and ordered forfeiture of $1 million. Williams appeals and we affirm.

---

[1]The Honorable Catherine D. Perry, Chief Judge, United States District Court for the Eastern District of Missouri.

## I. BACKGROUND

During the course of a Los Angeles, California, investigation into individuals trafficking drugs, Drug Enforcement Agents (DEA) in St. Louis learned of some "overlap" in their area and began wiretapping Kenneth Drones's telephone, among others, to investigate a heroin trafficking conspiracy. Drones was a mid-level heroin supplier in the St. Louis area. Cardia Johnson served as both Drones's drug courier and as a go-between for Drones and his supplier, Williams. The investigation leading up to the day's events at issue in this case was extensive, including months of wiretap and physical surveillance, vehicle searches, and other police activity.

On October 21, 2007, agents intercepted a call between Drones and Johnson in which Drones asked Johnson if she had talked to her "boyfriend," apparently a reference to Drones's supplier, Williams. Subsequent calls revealed that Drones's supplier was in St. Louis and that Johnson would be meeting with Drones to obtain money to take to the supplier. An agent conducting physical surveillance observed Johnson enter Drones's residence and exit with a white plastic bag that appeared to be full. Johnson then traveled to downtown St. Louis, picked up two individuals and drove a short distance to the Adam's Mark Hotel, where the two individuals, later identified as Williams and Johnny Hicks, took the money. Williams and Hicks then traveled in a red Toyota, following Johnson around the corner near a Hooters restaurant, where Williams reentered Johnson's vehicle and gave her a package. As the two cars were en route, agents intercepted a call between Johnson and Drones in which Johnson told Drones that there was a problem and that "he" was not willing to go forward. Johnson asked Drones whether she should "come back and get that" and Drones told her to "come back and get it." After the encounter near Hooters, the Toyota drove away and a pursuing agent observed Williams throw a white plastic shopping bag into the back seat of the Toyota.

The Toyota returned to the Adam's Mark Hotel and agents continued surveillance and learned that Johnny Hicks of Chicago, Illinois, rented a room in the hotel that day for cash. Agents intercepted additional calls between Johnson and Drones discussing the problem with the money Drones provided to Williams and Hicks in exchange for heroin. Later that evening, agents observed Johnson enter the Adam's Mark Hotel and exit a very short time later. Agents then stopped Johnson's vehicle and found $1,000 in currency in her purse. Based on their experience, the agents believed the money represented a courier fee. Following this stop, Johnson called Drones and told him she had been stopped and that she was nervous. She further explained that she called to warn the supplier about her stop and possible police activity.

Based on the above information, agents decided to make a traffic stop of the Toyota. To avoid a pursuit in downtown St. Louis, agents placed a tire deflation device on the Toyota. After the intercept of Johnson's call to Drones explaining that she had warned the supplier, Hicks and Williams left the hotel in the Toyota and proceeded onto the interstate. Agents pulled over the Toyota as its tires deflated. Then, they removed Hicks (the driver) and Williams (the passenger) from the vehicle and handcuffed them. Next, an agent asked Hicks for consent to search the vehicle as well as the hotel room, and Hicks replied, "go ahead." A search of the Toyota revealed a white plastic sack containing $62,496.00 in currency in the rear compartment of the vehicle on the passenger side.

Williams was subsequently charged with conspiring to distribute and possession with intent to distribute heroin, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and criminal forfeiture under 21 U.S.C. § 853. Williams filed a motion to suppress any evidence or statements arising out of the automobile stop. The court denied Williams's motion to suppress and, after a three-day trial, a jury found Williams guilty of the conspiracy to possess with intent to distribute charge. During the sentencing phase, the government sought the application of a mandatory minimum sentence of

twenty years' imprisonment under 21 U.S.C. § 841(b)(1)(A) based on Williams's previous Illinois state felony drug conviction.[2] Williams objected, but the district court overruled his objection and applied the mandatory minimum sentence. The court then calculated Williams's guidelines range at 360 months to life, but applied a downward variance and sentenced Williams to 262 months' imprisonment, ten years' supervised release, and ordered forfeiture of $1 million.

Williams appeals the court's pretrial denial of his motion to suppress, and his ultimate judgment and conviction, claiming that the search of the vehicle in which he traveled on the day in question was unconstitutional, and that the court erred in applying the mandatory minimum twenty-year sentence under 21 U.S.C. § 841(b)(1)(A).

## II.    DISCUSSION

### A.    Motion to Suppress and Constitutionality of Search

Williams first argues that the district court erred in denying his motion to suppress evidence from the search of the vehicle in which he was a passenger because any alleged consent to search given by the driver of the vehicle was involuntary, or in the alternative, the police lacked probable cause for the warrantless arrest and subsequent search. As a result, Williams claims, his judgment of conviction must be vacated and the matter remanded for a new trial free from the tainted evidence. Because the search was lawful, however, we have no occasion to visit Williams's consent claim.

---

[2]Before trial, the government properly filed an information with the court and attached a certified copy of Williams's prior conviction. See 21 U.S.C. § 851(a) (notice requirements for using prior convictions to enhance sentences).

"In reviewing a denial of a motion to suppress, we review the district court's factual determinations for clear error and its legal conclusions *de novo*." United States v. Parish, 606 F.3d 480, 486 (8th Cir. 2010). "Because this case proceeded to trial, we examine the entire record, not merely the evidence adduced at the suppression hearing, in considering the denial of [Williams's] motion to suppress." United States v. Inman, 558 F.3d 742, 745 (8th Cir.), cert. denied, 130 S. Ct. 304 (2009). "The existence of probable cause is a mixed question of law and fact that we review *de novo*." Parish, 606 F.3d at 486.

Searches conducted without a warrant are per se unreasonable, subject to a few well-established exceptions. United States v. Madrid, 152 F.3d 1034, 1037 (8th Cir. 1998). One such exception is the "automobile exception." The Supreme Court has held "that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is 'reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle.'" Arizona v. Gant, 129 S. Ct. 1710, 1719 (2009) (quoting Thornton v. United States, 541 U.S. 615, 632 (2004) (Scalia, J., concurring in judgment)); United States v. Winters, 600 F.3d 963, 968 (8th Cir. 2010). "[T]he offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." Id. The government bears the burden of establishing that an exception to the warrant requirement applies. Coolidge v. New Hampshire, 403 U.S. 443, 455 (1971).

Given the above, our first inquiry is whether the police had probable cause to arrest Williams. "'Probable cause to make a warrantless arrest exists when, considering all the circumstances, police have trustworthy information that would lead a prudent person to believe that the suspect has committed or is committing a crime.'" Parish, 606 F.3d at 486 (quoting United States v. Velazquez-Rivera, 366 F.3d 661, 664 (8th Cir. 2004)). Here, the officers had probable cause to arrest Williams. Williams argues that a lack of probable cause to arrest him is demonstrated by the

failure of any mention of Williams during the months of wiretap surveillance leading up to the events on October 21, 2007. But, the fact that Williams's name had not yet been specifically mentioned to-date in the investigation is not dispositive. Nor is the fact that the officers did not "know" Williams at the time they stopped the vehicle, which Williams intimates on appeal. Probable cause does not require certainty regarding Williams's identity. Cf. United States v. Muhammad, 604 F.3d 1022, 1027-28 (8th Cir. 2010) (reiterating that absolute certainty is not required by probable cause in the similar context of the plain-view exception to the Fourth Amendment search and seizure requirements).

At the time the officers witnessed Williams interacting with Johnson, they did not know his actual identity but he could certainly be reasonably identified by a prudent person as participating in a drug transaction and involved in the greater conspiracy at play. The officers had intercepted calls between Drones and Johnson, a supplier and suspected drug courier respectively, wherein Johnson discussed obtaining money from Drones to give to Drones's own supplier who was currently in St. Louis. And, officers observed Johnson leave Drones's residence with a white plastic shopping bag and observed Johnson conducting a transaction with a man later identified as Williams. Williams then tossed a similar-looking white plastic shopping bag into the back seat of the identified vehicle. Later that evening, after Johnson returned to the hotel to give what officers believed was more money to the supplier, and after receiving a "warning" call from Johnson regarding suspected police activity, Williams left the hotel and got on the interstate traveling in the same vehicle he was seen in earlier. Given these events, a prudent person, especially in light of the ongoing extensive investigation leading up to that day's events, would be led to believe the men traveling in the Toyota had committed or were committing a drug crime. The circumstances of the investigation, the physical surveillance and the intercepted wiretap calls revealed Williams's participation in the heroin conspiracy.

-6-

Because the Toyota left the Adam's Mark after the day's transactions with Johnson, and in close temporal proximity to Johnson's phone conversation with Drones's supplier warning him of police activity, in addition to the surveillance of Williams tossing a white plastic shopping bag into the back seat of the Toyota after meeting with Johnson, the police had probable cause to believe that evidence relevant to the drug crime would be found in the vehicle. See Gant, 129 S. Ct. at 1719 (distinguishing Thornton, 541 U.S. at 618 and New York v. Belton, 453 U.S. 454, 456 (1981), where the defendants were arrested for drug offenses, from Gant, where the defendant was arrested for driving with a suspended license, an offense for which there is "no reasonable basis to believe the vehicle contains relevant evidence"). In short, these officers had probable cause to believe that contraband or other evidence of drug crimes would be found in the stopped vehicle. Thus the search was constitutionally reasonable and we affirm the district court's denial of Williams's motion to suppress.

Because there was probable cause for the arrest and the search of the vehicle was not unreasonable, we need not determine whether the driver of the vehicle gave valid consent to search the vehicle.

## B.    Prior Conviction

At sentencing, the district court applied a mandatory minimum sentence of twenty years' imprisonment under 21 U.S.C. § 841(b)(1)(A) based on Williams's previous Illinois state felony drug conviction. On appeal, Williams claims the district court erred in its application of § 841(b)(1)(A). Specifically, Williams challenges the "finality" of the Illinois criminal record submitted in support of the enhancement application and argues that the government failed to support beyond a reasonable

doubt the basis for the requested enhancement.[3]  To apply the enhancement under §
841(b)(1)(A), the government had the burden of proving beyond a reasonable doubt
that Williams committed the present offense "after a prior conviction for a felony drug
offense has become final."  21 U.S.C. §§  841(b)(1)(A), 851(c)(1).  To satisfy its
burden here, the government submitted a Certified Statement of
Conviction/Disposition from Cook County, Illinois, which was a multi-page document
containing multiple "minute entries" and truncated court notations.  Williams claims
the government relied upon "an obviously incomplete and/or inaccurate record as its
sole support for doubling the mandatory minimum from ten years to twenty," and thus
failed to meet its burden.

   "Because resolution of this claim requires us to interpret [21 U.S.C. §
841(b)(1)(A)], we review de novo the district court's use of . . . prior convictions for
enhancement purposes."  United States v. Stallings, 301 F.3d 919, 920 (8th Cir. 2002)

---

[3]Williams also, in part, claims that his prior Illinois offense was not a "felony"
for purposes of the enhancement, pointing to a notation of "M" on the Certified
Statement following a notation of "Change in Priority Status," which Williams argues
clearly indicates a misdemeanor and not a felony.  But state law is not relevant to our
inquiry.  The critical historical fact for our purposes today is that, as the district court
held, Williams pled guilty to the Illinois offense, the punishment for which meets the
definition of "felony" under federal law.  See 21 U.S.C. § 802(44) ("Felony drug
offense" is defined by statute as "an offense that is punishable by imprisonment for
more than one year under any law of the United States or of a State or foreign country
that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic
steroids, or depressant or stimulant substances.")  Even if the Illinois court later
changed its notation, or even if it had expunged Williams's record altogether, the
initial plea satisfies the enhancement in this case.  See Dickerson v. New Banner Inst.,
Inc., 460 U.S. 103, 115 (1983) (discussing this issue in the context of an application
for a license as a firearms and ammunition dealer and manufacturer, regulated by the
Gun Control Act of 1968, which made it unlawful for a person convicted of a crime
punishable by imprisonment for a term exceeding one year to receive).  We thus
affirm the district court's conclusion that the Illinois offense was a felony for purposes
of the enhancement.

(quotation omitted). "[T]he determination of what constitutes a 'final conviction' for purposes of section 841(b) is a question of federal law." United States v. Slicer, 361 F.3d 1085, 1087 (8th Cir. 2004). Thus, Williams's argument regarding what constitutes a "conviction" in Illinois, is inapposite.

Williams points to several ambiguous notations on the Certified Statement, attempting to raise doubt as to the finality of his conviction. However, based on the Conviction/Disposition, it is clear that (1) Williams was charged with felony possession of a controlled substance in Cook County, Illinois, (2) he pled guilty to that crime, (3) he was sentenced to probation, and (4) he was found guilty of violating his probation. In United States v. Ortega, we held that "deferred adjudications or probated sentences constitute convictions in the context of § 841." 150 F.3d 937, 948 (8th Cir. 1998) (quotation omitted). There, we found a prior "final conviction" under § 841(b) where the defendant was found guilty and was required to serve three years of supervised probation, but also received a suspended imposition of sentence. Moreover, we determined that the defendant's prior conviction was "final" even though a motion to withdraw his guilty plea for the prior offense was pending in state court. We explained, "we will consider [defendant's] guilty plea final until such time as the state court grants its motion." Id.

Also instructing our determination is an analysis conducted by the Seventh Circuit in United States v. McAllister, 29 F.3d 1180, 1185 (7th Cir. 1994). There, the Seventh Circuit determined whether the defendant's prior Illinois state offense constituted a "prior conviction" under § 841(b). A defendant in McAllister pled guilty to a felony drug offense under Illinois law, was sentenced to probation, and completed the terms/conditions of his probation and was discharged. Due to the successful completion of his probation and discharge, his offense was not treated as a "conviction" under Illinois law. Id. Even so, the Seventh Circuit reasoned that "[p]robation is not imposed upon someone who is not guilty of a crime," and held that "probation is a conviction under § 841(b)(1)(B)." Id.

Therefore, under this circuit's precedent, including our reasoning in <u>Ortega</u>, and instructed by our sister circuit's analysis in <u>McAllister</u>, Williams's Illinois drug offense constitutes a final, prior conviction for a felony drug offense under § 841(b)(1)(A). We affirm the district court's application of the enhancement.

## III.    CONCLUSION

For the reasons stated herein, we affirm.

————————————————