NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0856n.06

No. 10-5253

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

*Aug 07, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | On Appeal from the United States |
| v. | ) | District Court for the Eastern District |
| | ) | of Tennessee |
| VINCENTE CORONA | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

Before:  BOGGS and GIBBONS, Circuit Judges; RUSSELL, Senior District Judge.[*]

RUSSELL, Senior District Judge: Defendant-Appellant Vincente Corona ("Corona") appeals his conviction for various drug offenses and conspiracy to commit money laundering. The five-count criminal indictment charged Corona and others with conspiracy to transport and sell cocaine and marijuana within the Eastern District of Tennessee, conspiracy to commit money laundering, and three separate instances of aiding and abetting others in the distribution of five or more kilograms of cocaine. His conviction on all five counts followed after a nine-day jury trial. He was sentenced to a term of life imprisonment after the district court found he had two previous felony drug convictions and enhanced his sentence under 21 U.S.C. §§ 851 and 841(b)(1)(A).

---

[*] The Honorable Thomas B. Russell, United States Senior District Judge for the Western District of Kentucky, sitting by designation.

-1-

No. 10-5253, *United States v. Vincente Corona*

Corona now appeals his conviction and sentence, citing errors in each. He argues that reversal of his conviction is justified because the Government introduced impermissible hearsay evidence from an unindicted coconspirator. Corona argues his mandatory life sentence is procedurally and substantively unreasonable because he does not have the requisite felony drug convictions to justify his enhanced sentence. He further says the district court was not bound by the jury's determination on drug quantity and should have found he was responsible for a smaller amount. Finding no error below, we affirm both the conviction and the life sentence.

**I.**

### A. Pretrial factual background

During trial, the Government alleged Corona was involved in a plot to transport cocaine and marijuana from California to areas of east Tennessee and north Georgia for sale and distribution. Coconspirators Richard Robinson, Dennis Richardson, Jermaine Hughes, and Kimberly Robinson testified for the Government in exchange for sentencing consideration. Collectively, these witnesses indicated Corona was the conspiracy's major source of cocaine.

Richard Robinson and Richardson said Corona began supplying them with cocaine and marijuana in 2004. The two received weekly shipments of cocaine, provided by Corona, from California to Tennessee weighing between five and twenty-seven kilograms. Richard Robinson's wife, Kimberly Robinson, accompanied him to several meetings with Corona where drug transactions occurred. Witnesses testified that, in all, Corona supplied more than 200 kilograms of cocaine to the drug organization in east Tennessee. Distributors in the conspiracy also purchased

marijuana from both Corona and an unindicted coconspirator named "Worm." The marijuana too was shipped from California.

In 2005, Richard Robinson was arrested for his drug-related activities and was held in the Knox County Detention Center. Richardson and Hughes continued to engage in the conspiracy during Richard Robinson's incarceration. At some point, Hughes spoke with Worm in an attempt to acquire more narcotics. Hughes testified that Worm responded that he did not "mess with the white side of the fence, he only messed with the green side of the fence." Hughes interpreted the statement to mean Worm did not deal cocaine.

Kimberly Robinson began cooperating with law enforcement following her husband's arrest. In November of 2005, she started recording her conversations with Richardson and Corona. Richardson eventually brokered a meeting on December 15, 2005, between Kimberly Robinson and Corona in Los Angeles. There, the two discussed the continued sale of cocaine and its eventual distribution in Tennessee. Kimberly Robinson and Corona agreed to meet again in January of 2006 because he did not possess cocaine to sell her at that time. On January 4, 2006, Kimberly Robinson and Richardson spoke about her anticipated purchase of cocaine from Corona. In the taped conversation, Richardson advised her that Corona would sell cocaine for $14,500 a kilogram. Kimberly Robinson agreed to meet Corona in California three days later to make the purchase. Richardson confirmed at trial that he had spoken with Corona about the price and relayed the information to Kimberly Robinson.

Kimberly Robinson, Richardson, and Corona met in California on January 7, 2006. The three spoke about Corona's future sales of cocaine to Kimberly Robinson and Richardson. Corona

outlined future transactions, with cash payments by Kimberly Robinson on Fridays and delivery of cocaine on the following Mondays. He also envisioned the increase of sales to eight kilograms a week. With Kimberly Robinson's assistance, this conversation was secretly recorded by law enforcement officials.

Immediately following this gathering, law enforcement arrested Corona and Richardson. While incarcerated before trial, Corona encouraged both Richardson and Hughes to wrongly characterize their drug activities as only involving the sale of marijuana and not cocaine because the penalties for the former involve less jail time. Both men declined and eventually offered testimony to the contrary against Corona.

## B. Statements by coconspirator

At trial, Corona attacked the Government's strategy to paint him as the conspiracy's source of cocaine. He instead insinuated that the Government's witnesses had framed him to protect Worm, the conspiracy's true connection for cocaine. To undermine this argument, the Government elicited testimony from Hughes at trial to demonstrate Worm trafficked solely in marijuana. The pertinent testimony is as follows:

| | |
|---|---|
| Hughes: | [Richard Robinson] asked me to get in touch with his home boy Worm and let him know everything was all right. That he would holler at him, when everything was over with. |
| Government: | Did you, in fact, contact Worm? |
| Hughes: | Yes, sir. |
| Government: | And when you spoke with Worm at Richard Robinson's request, did you talk with him about the possibility of buying more drugs? |
| Hughes: | I talked to him about - I know I remember one conversation I had I told him it was dry in terms of something to smoke. I wanted to smoke, inquiring about if I could buy personally some marijuana for my own use personally. |

Government: What did Worm say, when you asked him that?
Hughes: Well, first he said he didn't mess with the white side of the fence, he only messed with the green side of the fence. That is what I said, yeah, I only want something to smoke.
Government: When he said he didn't mess with the white side of the fence, what did you understand him to mean?
Hughes: That he didn't deal cocaine.

R. 485, TT 2/14/08, Hughes p. 32-33. Corona's attorney objected, arguing that Worm's statements were hearsay that did not meet any relevant exception. The district court overruled the objection, finding that Worm was a part of the conspiracy and the remark was in furtherance of the conspiracy pursuant to Federal Rule of Evidence 801(d)(2)(E).

**C. Sentencing issues**

The Government offered notice before trial under 21 U.S.C. § 851 that it would seek to enhance the penalties Corona faced as provided by 21 U.S.C. § 841(b)(1)(A). After the guilty verdict, the Government offered three qualifying felony drug convictions as the basis for enhancement: (1) a 1998 California conviction for possession of methamphetamine ("1998 Conviction"), (2) a 1989 federal conviction for possession with intent to distribute cocaine and (3) a 1987 California conviction for the sale or transportation of cocaine ("1987 Conviction"). While he conceded the federal conviction was a qualifying felony for enhancement purposes, Corona lodged objections to the Government's use of the two California convictions to enhance his sentence. The district court held a sentencing hearing to review the convictions. There, Corona argued the Government had not sustained its burden of proving beyond a reasonable doubt that felony drug convictions that had become final resulted from these proceedings in California's Superior Court.

The 1998 Conviction unfolded as follows. In September of 1997, Corona was charged with possession of methamphetamine in violation of Health and Safety Code § 11377(a). On January 8, 1998, he was convicted in California Superior Court. The court suspended the proceedings and ordered him to serve three years probation. Corona chose not to appeal the order of probation and his probation was terminated three years later pursuant to California Penal Code § 1203.3.

In the sentencing hearing, the Government relied on a variety of exhibits from the California court system to show the 1998 Conviction's finality. It introduced copies of the felony complaint and charging information, the transcript of the Superior Court proceedings where Corona pleaded guilty and probation was ordered, minute entries[1] from Superior Court indicating he pleaded guilty and was placed on probation, and exhibits showing he did not appeal the order of probation. In conjunction with the record, the district court examined the California Health and Safety Code and concluded possession of methamphetamine was a felony drug offense.

The underlying record presents the following narrative for the 1987 Conviction. In September of 1987, Corona was charged with the sale or transport of a controlled substance in violation of Health and Safety Code § 11352. Corona pleaded guilty to the charge in Municipal Court in California, which then certified the plea to Superior Court. On November 6, 1987, Superior Court accepted the guilty plea entered in Municipal Court for violating § 11352. Superior Court suspended the proceedings and ordered Corona to serve three years probation. Corona did not appeal

---

[1] A minute entry is "prepared by a court official at the time the guilty plea is taken (or shortly afterward), and that official is charged by law with recording the proceedings accurately." *United States v. Snellenberger*, 548 F.3d 699, 702 (9th Cir. 2008) (describing minute entries from the California state courts).

the court's order of probation. Again, Corona's probation was terminated several years later pursuant to California Penal Code § 1203.3.

At the district court hearing, the Government introduced a number of certified records as evidence of the 1987 Conviction. These included copies of the criminal complaint, multiple minute entries from the Municipal and Superior Courts documenting Corona's plea and probationary sentence, a transcript from the change of plea hearing in Municipal Court, and minute entries showing Corona violated his probation. This evidentiary foundation convinced the district court beyond a reasonable doubt that the 1987 Conviction constituted a final felony drug conviction.

Corona asserted several reasons for the district court to reject enhancement of his sentence. He stated that the Superior Court's decisions to suspend the proceedings for each conviction, order probation, and terminate probation under California Penal Code § 1203.4 meant his convictions were not final. He claimed that the exhibits introduced were unreliable and did not prove beyond a reasonable doubt that the 1998 and 1987 Convictions were final felony convictions. For the 1998 Conviction, he stated that because offenses under § 11377(a) may be prosecuted as either a felony or a misdemeanor under California law, the 1998 Conviction was actually a misdemeanor. Unpersuaded, the district court determined both convictions were felony drug offenses under federal law and enhanced Corona's sentence to mandatory life imprisonment.

**D.  Drug quantity determination**

For Count One, the jury found the conspiracy to distribute cocaine involved more than five kilograms of the drug. It reached a similar conclusion with the charges of aiding and abetting others in the distribution of cocaine in Counts Three, Four, and Five. In a post-trial memorandum, Corona

asserted the district court was not bound by the jury-determined five kilogram quantities, based on this court's decision of *United States v. Cox*, 565 F.3d 1013 (6th Cir. 2009). He argued that two kilograms was the most he was responsible for based on the objective proof at trial. The district court denied this request and adopted the jury's finding on quantity.

## II.

### A.  Coconspirator's statements

Corona protests the introduction of statements by Hughes that Worm's drug activities were limited to the sale of marijuana. Corona stresses that these comments were inadmissible hearsay and undercut his defense at trial that he was framed by his coconspirators. The Government says the statement is not hearsay under Federal Rule of Evidence 801(d)(2)(E). In the alternative, the Government contends that if Hughes's statements were inadmissible, the introduction was harmless error since the evidence in favor of Corona's guilt was overwhelming.

Out-of-court statements between coconspirators are admissible if they meet the foundational prerequisites of Federal Rule of Evidence 801(d)(2)(E). Under the rule, a district court must conclude "(1) the conspiracy existed; (2) the defendant was a member of the conspiracy; and (3) the co-conspirator made the proffered statements in furtherance of the conspiracy." *United States v. Warman*, 578 F.3d 320, 335 (6th Cir. 2009) (citing *United States v. Wilson*, 168 F.3d 916, 920 (6th Cir. 1999)). "If it is more likely than not that the declarant and the defendant were members of a conspiracy when the hearsay statement was made, and that the statement was made in furtherance of the conspiracy, the hearsay is admissible." *United States v. Hitow*, 889 F.2d 1573, 1581 (6th Cir. 1989). The district court's determination on whether the foundational criteria under Rule 801 were

met "is a question of fact for the district court that [this court] review[s] for clear error." *Warman*, 578 F.3d at 335 (citing *United States v. Maliszewski*, 161 F.3d 992, 1007 (6th Cir. 1998)). "However, [this court] review[s] the [district] court's ultimate legal conclusion regarding admissibility *de novo*." *Id*.

Corona concedes that sufficient proof existed for the district court to find a conspiracy existed and that Worm was a member of the conspiracy. He contends that Hughes's conversation with Worm was not in furtherance of the conspiracy as it promoted his own agenda to secure marijuana for his personal use.

"A statement is 'in furtherance of' a conspiracy if it is intended to promote the objectives of the conspiracy." *United States v. Clark*, 18 F.3d 1337, 1342 (6th Cir. 1994). "Statements that have been found to be 'in furtherance of' conspiracies include statements identifying other conspirators and their roles in the conspiracy, statements to inform other conspirators of the activities or status of the conspiracy, and statements as to the source or purchaser of controlled substances." *Hitow*, 889 F.2d at 1581 (internal citations omitted). "[A] statement may be in furtherance of a conspiracy 'even if not exclusively, or even primarily, made to further the conspiracy.'" *Warman*, 578 F.3d at 338 (quoting *United States v. Tocco*, 200 F.3d 401, 419 (6th Cir. 2000)). Idle chatter and casual conversations do not meet this threshold and are not properly admitted under Rule 801(d)(2)(E). *Id*. (citing *United States v. Darwich*, 337 F.3d 645, 657 (6th Cir. 2003)).

Given their context, Worm's comments were made in furtherance of the conspiracy. *See id*. ("Whether a statement was in furtherance of a conspiracy turns on the context in which it was made and the intent of the declarant in making it."). According to Hughes, the conversation between

Worm and himself arose out of Richard Robinson's request that the two men talk about the possibility of continued drug transactions in spite of Robinson's incarceration. Prior to the phone call, Hughes had never dealt directly with Worm even though both were affiliated with Robinson's organization. Worm's statement that he only sold marijuana may be characterized as bringing Hughes up to speed on a segment of the conspiracy, specifically Worm's responsibilities, with which he had been previously unfamiliar. Put another way, Worm was defining his role in the conspiracy to Hughes as well as identifying himself as the source of the marijuana. Moreover, Worm's remarks to Hughes that he did not sell cocaine indirectly identified the source of cocaine as someone else. Statements like these are in furtherance of a conspiracy and thus admissible under Rule 801(d)(2)(E). *See United States v. Franklin*, 415 F.3d 537, 552 (6th Cir. 2005) (statements identifying the participants and their roles in a conspiracy are in furtherance of that conspiracy); *United States v. Monus*, 128 F.3d 376, 392-93 (6th Cir. 1997) (statement that identifies participant and explains their role is admissible under Rule 801(d)(2)(E)); *United States v. Bryan*, 35 F.3d 567, 1994 WL468034 at *7 (6th Cir. 1994) (table) (statements identifying the drug's source are in furtherance of the conspiracy). The district court's adoption of this rationale upon admitting Hughes's testimony means it did not err with this evidentiary decision.

Even assuming that Hughes's testimony did not meet the foundational prerequisites for Rule 801(d)(2)(E), any error does not justify reversal as the evidence at trial against Corona was abundant and persuasive.[2] Evidentiary rulings at trial, including those concerning the admissibility of a

---

[2] Corona contends Worm's statement to Hughes violated the Constitution's Confrontation Clause, and thus reversal of his conviction is necessary. As Rule 801(d)(2)(E) covers Worm's

coconspirator's statements, are subject to harmless-error analysis. *Warman*, 578 F.3d at 340-41.

Reversal of a conviction is unwarranted if it is possible to say with fair assurance "'that the judgment

was not substantially swayed by the error.'" *Id.* at 340 (quoting *Kotteakos v. United States*, 328 U.S.

750, 765 (1946)). "'The erroneous admission of a statement by an unindicted co-conspirator

constitutes harmless error when sufficient other evidence demonstrates a defendant's active

involvement in the conspiracy.'" *United States v. Young*, 553 F.3d 1035, 1047-48 (6th Cir. 2009)

(quoting *United States v. Rogers*, 118 F.3d 466, 477 (6th Cir. 1997)).

Corona argues against harmless-error analysis because the evidence against him was not

overwhelming. He is mistaken. Richard Robinson, Kimberly Robinson, and Richardson all

identified Corona as a source of cocaine for the conspiracy. Richard Robinson and Richardson gave

detailed accounts of how they purchased large quantities of cocaine from Corona, which was later

packaged in front of Corona for shipment. Richardson and Hughes relayed that while in custody,

Corona admitted he sold cocaine to the members of the conspiracy and solicited their help to conceal

these past sales. Recorded conversations by Kimberly Robinson and her corroborating testimony

established Corona's drug distribution activities and his past interactions with other coconspirators

such as Richard Robinson and Richardson. Weighing the evidence presented at trial with the single

---

statement to Hughes, the statement was not hearsay and there is no issue with the Confrontation Clause. *United States v. Lopez-Medina*, 461 F.3d 724, 746 n. 5 (6th Cir. 2006). Even if the statement were hearsay, it did not violate Corona's rights under the Sixth Amendment because his statement was non-testimonial. *See Crawford v. Washington*, 541 U.S. 36, 50-51 (2004) (Confrontation Clause targets "formal statement[s] to government officers," not "casual remark[s] to an acquaintance"); *United States v. McCullough*, 150 F. App'x 507, 509 (6th Cir. 2005) (statements made to companion are not testimonial in nature).

statement Corona targets, it is impossible to say the judgment against him was "substantially swayed" by the objected-to testimony. *See Warman*, 578 F.3d at 340-41 (where district court erroneously admitted two hearsay statements, testimony of other coconspirators was sufficient to find harmless error); *Young*, 553 F.3d at 1047-48 (other coconspirators' corroboration of a defendant's role in conspiracy rendered moot a single portion of a witness's testimony that arguably contained inadmissible hearsay); *see also United States v. Sherrills*, 432 F. App'x 476, 485-86 (6th Cir. 2011) (where a coconspirator's statement was admitted without necessary details for foundational prerequisites, testimony from coconspirators and taped conversations rendered error harmless)

For these reasons, Corona's claims of inadmissible hearsay do not warrant reversing his conviction.

**B. Enhancement of sentence**

Corona challenges the district court's conclusions that the 1998 and 1987 Convictions were final felony drug convictions for the purposes of an enhancement under 21 U.S.C. §§ 841 and 851. He insists the district court possessed insufficient or unreliable evidence to adjudge either conviction as final. Corona continues that the 1998 Conviction was in fact a misdemeanor under California law. Accordingly, he asks this court to overturn his sentence of life imprisonment.

Sentencing decisions by a district court are reviewed for reasonableness under an abuse-of-discretion standard. *United States v. Wettstain*, 618 F.3d 577, 591 (6th Cir. 2010) (citations omitted). "'Review for reasonableness has both procedural and substantive components.'" *United States v. Jeross*, 521 F.3d 562, 569 (6th Cir. 2008) (quoting *United States v. Carter*, 510 F.3d 593, 600 (6th Cir. 2007)). Procedural errors include improperly calculating the guideline range of a sentence. *Gall*

*v. United States*, 552 U.S. 38, 51 (2007). If procedurally sound, this court then examines the substantive reasonableness of a sentence under abuse of discretion. *Id.*

Criminal defendants who commit drug offenses involving five or more kilograms of cocaine and in violation of section 841(a) shall be sentenced to a term of imprisonment not "less than 10 years or more than life." 21 U.S.C. § 841(b)(1)(A), (ii). Section 841 allows for a sentence of mandatory life imprisonment if a defendant violates § 841(b)(1)(A) and has "two or more prior convictions for a felony drug offense [that] have become final." 21 U.S.C. § 841(b)(1)(A). Where a defendant denies in writing the existence of the previous convictions, the district court is required to hold a hearing where the government must prove beyond a reasonable doubt any contested allegation of the earlier convictions. 21 U.S.C. § 851(c)(1).

A ruling by the district court that a defendant has a prior conviction is a factual finding. *United States v. Chisom*, 249 F. App'x 406, 410 (6th Cir. 2007) (citing *United States v. Horton*, 163 F. App'x 378, 380 (6th Cir. 2006)). "The standard of review for a district court's factual findings at sentencing is clear error." *United States v. Katzopoulos*, 437 F.3d 569, 578 (6th Cir. 2006); *accord Chisom*, 249 F. App'x at 410 ("This Court reviews a district court's factual findings at sentencing for clear error." (citation omitted)). This court reviews *de novo* the legal conclusion that a prior conviction is a qualifying offense under 21 U.S.C. § 841(b)(1)(A). *See United States v. McGrattan*, 504 F.3d 608, 610 (6th Cir. 2007) (citing *United States v. Armstead*, 467 F.3d 943, 946 (6th Cir. 2006)); *see also United States v. Williams*, 616 F.3d 760, 766 (8th Cir. 2010); *United States v. Norbury*, 492 F.3d 1012, 1014 (9th Cir. 2007). Whether the district court relied on the appropriate type of evidence in reaching its conclusion on past convictions is a pure legal question and warrants

*de novo* review as well. *See United States v. Jimenez*, 605 F.3d 415, 420 (6th Cir. 2010) abrogated on other grounds by *Tapia v. United States*, 131 S.Ct. 2382 (2011).

Having conceded his guilt of the prior federal felony drug conviction in 1989, we need only to hold that the district court was correct as to either the 1998 Conviction or the 1987 Conviction to impose a mandatory life sentence on Corona. Upon review, however, we hold that the district court correctly determined that both were final felony convictions for the purposes of enhancement.

### 1. 1998 Conviction

Between 1997 and 1998, Corona was arrested and charged with possession of methamphetamine, in violation of California Health and Safety Code §§ 11377(a) and 11055(d)(2). Corona says the district court incorrectly used the 1998 Conviction to enhance his conviction for a number of reasons: (1) unreliable evidence was introduced to support the conviction's existence, (2) the suspension of the imposition of his sentence and his probation's dismissal means no final conviction occurred for enhancement purposes, and (3) even if there was a final drug conviction, it was a misdemeanor and not a felony. Each is unpersuasive.

Corona admits he was the subject of the 1998 Conviction but contends the Government did not establish beyond a reasonable doubt the California court entered a final judgment of conviction. A district court's decision that the evidence showed the fact of a prior conviction beyond a reasonable doubt under § 851(c)(1) is reviewed *de novo*. *United States v. Arreola-Castillo*, 539 F.3d 700, 703 (7th Cir. 2008); *United States v. Wright*, 238 F.3d 418, 2000 WL 1846340, at *4 (4th Cir. 2000) (per curium) (table). All reasonable inferences are viewed in the light most favorable to the government, *United States v. Harris*, 369 F.3d 1157, 1167 (10th Cir. 2004); *United States v. Green*,

175 F.3d 822, 834 (10th Cir. 1999) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)), and findings of fact are reviewed for clear error, *United States v. Kellam*, 568 F.3d 125, 143 (4th Cir. 2009).

The Government introduced the transcript from the California Superior Court where Corona pleaded guilty, the judge suspended his sentence, and placed him on three years formal felony probation. It further produced copies of the criminal complaint, a certified minute entry showing the imposition of the sentence, and documents memorializing his placement on probation, along with its revocation, termination, and dismissal. As these exhibits convincingly established Corona's conviction beyond a reasonable doubt, the district court was not mistaken in this regard. *See Williams*, 616 F.3d at 766-67 (document containing multiple minute entries was adequate to prove the existence of the prior conviction beyond a reasonable doubt for enhancement under § 841).

Next, Corona advocates for his sentencing's reversal because the 1998 Conviction was not a final drug conviction. He declares as much because the California Superior Court suspended the criminal proceeding, ordered a term of probation, and later dismissed the case at the end of his probation, under California Penal Code § 1203.4. Corona charges that the alternative sentencing precludes a finding of finality. The Government responds that the sentence of probation and the failure of Corona to appeal the sentence qualifies as a final conviction under federal law.

The dispositive issue is whether a final felony conviction follows from the suspension of criminal proceedings, an order of probation, and the dismissal of probation. A prior felony drug conviction must be final if it is to be used for enhancement purposes. 21 U.S.C. § 841(b)(1)(A). Federal law governs whether a prior conviction is final within the meaning of § 841. *Adams v.*

*United States*, 622 F.3d 608, 612 (6th Cir. 2010). "A conviction becomes final for the purpose of [federal] sentencing when the time for taking a direct appeal from the judgment of conviction has expired." *United States v. Miller*, 434 F.3d 820, 823 (6th Cir. 2006) (citing *United States v. Walker*, 160 F.3d 1078, 1093 (6th Cir. 1998)). Other circuits have found finality for federal enhancement purposes where sentencing courts have either deferred, suspended, or dismissed an earlier felony conviction. *United States v. Law*, 528 F.3d 888, 910-11 (D.C. Cir. 2008) (where prior conviction was set aside under Federal Youth Corrections Act, it was still properly considered as final conviction under § 841); *Norbury*, 492 F.3d at 1014-15 (enhancement under § 841 was appropriate even though previous conviction was dismissed); *United States v. Mejias*, 47 F.3d 401, 403-04 (11th Cir. 1995) (defendant's plea of nolo contendere where adjudication was withheld qualified as a prior conviction for enhancement).

In *United States v. Miller*, this court reviewed the application of alternative sentencing and questions of finality under § 841. 434 F.3d at 823-24. The district court enhanced a defendant's sentence on account of a prior conviction, even though the state court in Georgia had deferred an adjudication of guilt during his earlier sentencing. *Id*. at 822. Under Georgia law, first offenders could be sentenced to a two-year probationary period, at the end of which the original violation would be discharged without an adjudication of guilt. *Id*. at 823 (citing Ga. Code Ann. § 42-8-62(a)). While the defendant was not considered to have a criminal conviction under Georgia law, this court found a conviction for the purposes of § 841 became final "at the point at which [it was] no longer appealable." *Id*. at 824. As Georgia law permitted an appeal of this sentence following the order of probation, the defendant's conviction could be used for enhancement under § 841. *Id*.

The case at bar is indistinguishable from *Miller*. Corona was charged and pleaded guilty to a felony drug offense. The Superior Court suspended the proceedings and ordered three years of probation in lieu of incarceration. Where a California court enters an order granting probation, the effect is a final judgment that a criminal defendant may then appeal. Cal. Penal Code § 1237(a). Failure to file a notice of appeal with the Superior Court within sixty days results in the order's finality and voids the defendant's chance to appeal. *People v. Ramirez*, 72 Cal. Rptr. 3d 340, 344 (Cal. Ct. App. 2008) (citing Cal. Rules of Court, Rule 8.308(a)). There is no record of Corona having filed a notice of appeal following the order of probation. With Corona's decision not to appeal, the termination of his probation and the subsequent dismissal of this conviction do not affect the determination of finality under federal law.[3] *See Adams*, 622 F.3d at 612; *Miller*, 434 F.3d at 824.

Finally, Corona claims that the 1998 Conviction was not a felony at all, but actually a misdemeanor under § 17(b) of the California Penal Code. He states that either upon being sentenced to probation in 1998 or upon dismissal of the charges in 2001, the violation became a misdemeanor. As enhancement under § 841 is only appropriate after final *felony* convictions, Corona says the district court's sentence is in error.

---

[3] Corona draws a parallel between the resolution of the 1998 Conviction and the case of *United States v. Stallings*, 301 F.3d 919 (8th Cir. 2002). He says *Stallings* stands for the proposition that the entry of a probation order and suspension of the proceedings may not be characterized as a judgment against a criminal defendant under California law. We do not believe the holding in *Stallings* is dispositive on the issue at hand. We also note that the Eighth Circuit has more recently sidestepped the precedent of *Stallings* and enhanced defendants' sentences in circumstances akin to Corona's. *See United States v. Ramon-Rodriguez*, 492 F.3d 930, 938-40 (8th Cir. 2007); *United States v. Slicer*, 361 F.3d 1085, 1087 n. 1 (8th Cir. 2004).

California's code sets out that "[a] felony is a crime which is punishable with death or by imprisonment in the state prison. Every other crime or public offense is a misdemeanor except those offenses that are classified as infractions." Cal. Penal Code § 17(a) (1989). Possession of methamphetamine violates the California Health and Safety Code §§ 11377(a) and 11055(d)(2). It is punishable "by imprisonment in a county jail for a period of not more than one year or in the state prison." Cal. Health & Safety Code 11377(a) (1997). Such offenses under California law are commonly referred to as "wobblers," since the trial court's decision on the sentence imposed is dispositive as to whether the offense qualifies as a felony or a misdemeanor. *See United States v. Boumelhem*, 339 F.3d 414, 426 (6th Cir. 2003) (citing *California v. Powell*, 212 Cal. Rptr. 454 (1985)).

Section 17(b) of the California Penal Code defines under what circumstances a wobbler offense is a misdemeanor:

> (b) When a crime is punishable, in the discretion of the court, by imprisonment in the state prison or by fine or imprisonment in the county jail, it is a misdemeanor for all purposes under the following circumstances:
>
>> (1) After a judgment imposing a punishment other than imprisonment in the state prison.
>> . . .
>> (3) When the court grants probation to a defendant without imposition of sentence and at the time of granting probation, or on application of the defendant or probation officer thereafter, the court declares the offense to be a misdemeanor.

Cal. Penal Code § 17(b)(1), (3). "The offense is regarded as a felony until a judgment is entered, except where the court declares otherwise." *Boumelhem*, 339 F.3d at 426 (citing *People v. Soto*, 212 Cal. Rptr. 696 (Cal. Ct. App. 1985)); *accord People v. Banks*, 348 P.2d 102,112 (Cal. 1959). An

order sentencing a defendant to probation and suspending the proceedings afterward does not equate to a misdemeanor judgment under § 17(b)(1). *See United States v. Qualls*, 108 F.3d 1019, 1022 (9th Cir. 1997); *United States v. Haggerty*, 85 F.3d 403, 406-07 (8th Cir. 1996).

This court is not unfamiliar with the law surrounding wobblers. Twice, criminal defendants have appealed their convictions arguing that a district court erred when it construed a criminal offense as a felony under California's penal code rather than a misdemeanor. *See United States v. Robinson*, 390 F.3d 853, 879 (6th Cir. 2004); *Boumelhem*, 339 F.3d at 426. On both occasions, the court disagreed.

In *Boumelhem*, the court reviewed whether an offense was a felony or misdemeanor under California's law on wobblers. There, a defendant pleaded nolo contendere to charges of grand theft in the California's Superior Court. *Boumelhem*, 339 F.3d at 423. The sentencing court suspended the proceedings and entered an order for felony probation. *Id*. at 426. The classification of the earlier offense became an issue when a federal district court concluded the defendant was a felon for the purposes of 18 U.S.C. § 922(g). *Id*. at 425. On appeal, this court ruled that entry of a probation order did not qualify as a judgment under § 17(b)(1) of the California Penal Code, and therefore classification as a misdemeanor was unjustified. *Id*. at 426 (citing *United States v. Robinson*, 967 F.2d 287, 293 (9th Cir. 1992)). The court then found misdemeanor treatment under § 17(b)(3) was also improper where the California court did not declare on the record the offense to be a misdemeanor. *Id*. at 426-27. *Boumelhem* was reaffirmed a year later when the court again found a felony conviction under § 17 of the California Penal Code where the defendant entered a nolo

contendere plea, sentence was imposed, and probation was ordered. *Robinson*, 390 F.3d at 879-80 (reviewing whether a defendant had a prior felony conviction under § 922(g)).

Corona's circumstances differ little from the facts reviewed in *Boumelhem* and *Robinson*. Following his plea of guilty, the state court kept jurisdiction over the matter, entered an order of probation, and suspended the proceedings. Under these circumstances, the California court did not enter a misdemeanor judgment. *See Robinson*, 390 F.3d at 879-80; *Boumelhem*, 339 F.3d at 426-27. Because the 1998 Conviction did not wobble between a felony and misdemeanor, the district court correctly concluded the 1998 Conviction qualified as a felony conviction under California law.

In a last-ditch effort to avoid enhancement under §§ 841 and 851, between his sentencing hearings on November 17, 2008 and March 30, 2009, Corona petitioned the Los Angeles Superior Court to reduce the 1998 Conviction from a felony to a misdemeanor under § 17(b)(3) of the California Penal Code. The Superior Court obliged and amended the felony count for the 1998 Conviction to a misdemeanor. He now argues that the Superior Court's eleventh-hour rebranding of the 1998 Conviction precluded the district court from treating it as a felony drug conviction during his sentencing. Corona is incorrect. In *Boumelhem*, this court indicated that for favorable sentencing treatment, any reclassification from felony to misdemeanor under § 17 of the California Penal Code was required to take place "at the time [the defendant] took the actions that would form the basis of his federal conviction." *Boumelhem*, 339 F.3d at 427. Since the California Superior Court did not alter the 1998 Conviction until well after the conspiratorial activities that are the foundation of his conviction, the district court was justified in enhancing his sentence.

### 2. 1987 Conviction

The district court found that in 1987, Corona was convicted of a felony under California law for the sale or transportation of cocaine. Neither party contests that a conviction for the sale or transportation of cocaine would permit enhancement of Corona's sentence. *See* Cal. Health & Safety Code § 11352(a) (1988) (punishable by a maximum term of imprisonment of three, four, or five years). Rather, Corona challenges the enhancement of his sentence under §§ 841 and 851 because the district court used unreliable forms of evidence, the Government did not establish a final conviction beyond a reasonable doubt, and the California Superior Court disposed of charges in 1987 without issuing a final conviction. On review, we find Corona is incorrect on all counts.

Corona attacks the type of evidence the district court relied on, specifically exhibits from the Municipal Court of California and the certified minute entries from the Superior Court. First, he questions the introduction of exhibits from the Municipal Court of California, in particular the transcript of his guilty plea on September 22, 1987, as evidence of the existence of the 1987 Conviction. Since a Municipal Court may only take a defendant's plea of guilty and then certify it for consideration by the Superior Court, Cal. Penal Code § 859a(b), Corona says the plea transcript from the Municipal Court cannot prove the Superior Court accepted the plea and rendered judgment. Without a copy of the transcript of the Superior Court plea colloquy, he insists the Government cannot show a final conviction beyond a reasonable doubt. Second, Corona attests that the minute entries from the Superior Court are inadequate to show a final judgment of conviction occurred since they do not offer an adequate indicia of reliability. He seemingly advocates for a bright-line rule requiring the Government to produce the transcript of the plea hearing as conclusive proof of a final

criminal judgment and a general bar against admitting minute entries for enhancement under § 841 because of their inherent unreliability. Both of these arguments are unconvincing.

Corona initially runs afoul of the general proposition that when it comes to sentencing, "a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come." *United States v. Tucker*, 404 U.S. 443, 446 (1972) (citations omitted). In considering what is admissible evidence for § 841(b)(1)(A) sentence enhancements, the district court "'may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, *provided that the information has sufficient indicia of reliability to support its probable accuracy*.'" *United States v. Pratt*, 553 F.3d 1165, 1170 (8th Cir. 2009) (quoting U.S.S.G. § 6A1.3(a)) (emphasis in original). Courts routinely accept transcripts from sentencings and minute entries as evidence in a variety of sentence-enhancement scenarios. *See Williams*, 616 F.3d at 766-67 (minute entries used for enhancement under 21 U.S.C. § 841(b)(1)(A)); *Snellenberger*, 548 F.3d at 701-02 (district court may rely on minute entries from California state courts to show past offense was a crime of violence for the purposes of U.S.S.G. § 4B1.1(a)); *see also Chisom*, 249 F. App'x at 410-11 (minute entries used to show defendant qualified as an Armed Career Criminal under 18 U.S.C. § 924(e) and U.S.S.G. § 4B1.4). The district court did not err in accepting the minute entries and Municipal Court records into evidence.

Much as with the 1998 Conviction, Corona argues there was inadequate proof to show the proceeding in the California Superior Court ended in a final felony drug conviction as required by § 841. He states the transcript from his guilty plea is of dubious value since a final conviction cannot

arise out of the Municipal Court in California. He also says the minute entries are insufficient to prove beyond a reasonable doubt a final judgment was entered in the Superior Court.

The Government introduced a certified copy of the felony criminal complaint, a certified copy of the Municipal Court transcript of Corona's guilty plea, a certified copy of the minute entry for that guilty plea, and a certified copy of the "Certificate and Order of the Magistrate" entered by the state magistrate judge confirming Corona's guilty plea. Even if a Municipal Court in California cannot enter the final judgment of conviction, these documents are evidence of Corona's later conviction and judgment in the Superior Court. The Government also produced the Superior Court's Report For an Intermediate Sentence or Other Sentence, and a minute entry documenting Corona's change of plea. Collectively, the documents offer definitive proof Corona pleaded guilty to a violation of California's Health and Safety Code, was sentenced on November 6, 1987, and the imposition of the sentence was suspended. They are further corroborated by the post-conviction exhibits revoking and then terminating Corona's probation. Taken in the aggregate, the evidence constituted an adequate foundation for the district court to enhance Corona's sentence.

Corona claims that no final judgment was entered in the 1987 Conviction because the Superior Court terminated his probation and dismissed the case under California Penal Code § 1203.3. The issue for this section is whether an order of probation and the suspension of proceedings followed by no notice of appeal can constitute a prior conviction within the meaning of § 841? Though Corona asserts this alternative sentencing does not meet the federal test for finality, the 1987 Conviction is final for § 841 purposes under the same logic as the 1998 Conviction. Corona was charged and pleaded guilty to a felony drug offense. The Superior Court suspended the proceedings

and ordered three years of probation rather than incarceration. California's statutes provided Corona an avenue for appeal, which he decided against. *See* Cal. Penal Code § 1237(a). Since a conviction is final under federal law where the time for taking a direct appeal has expired, *see Miller*, 434 F.3d at 823; *United States v. Soto*, 8 F. App'x 535, 541 (6th Cir. 2001), the termination of Corona's probation and the subsequent dismissal are irrelevant to the determination of finality under federal law.

### C. Drug quantity determination

Lastly, Corona states the district court erred when it concluded it was bound by the jury's finding of more than five kilograms as the drug quantity for the conspiracy count. He proposes that the district court was permitted to ignore the specific quantity determinations by the jury and the amount alleged in the indictment. This argument is directly refuted by this court's prior rulings. *See*, *e.g.*, *United States v. Manns*, 277 F. App'x 551, 559 (6th Cir. 2008) (a defendant's argument of improper sentencing was "foreclosed" since the district court based its sentencing on the quantity of drugs the jury decided upon); *United States v. Ricketts*, 317 F.3d 540, 545 (6th Cir. 2003) ("The district court cannot ignore the jury's findings as to drug quantity unless there is insufficient evidence to support those findings." (citing *United States v. Flowal*, 234 F.3d 932, 936 (6th Cir. 2000))). The case Corona cites, *United States v. Cox*, 565 F.3d 1013 (6th Cir. 2009), was a bench trial and therefore the determination of the minimum amount of cocaine attributable to the defendant was made by the trial judge. Here, the district court correctly deferred to the jury's drug quantity determination.

## CONCLUSION

The district court did not err with its decisions to admit Hughes's statements at trial or sentence Corona to life imprisonment. For the aforementioned reasons, the district court's rulings are **AFFIRMED**.